IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:16-CV-334-RJ

| | | |
|---|---|---|
| PERCY THELMORE TYNDALL, | ) | |
| | ) | |
| Plaintiff/Claimant, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-20, -25] pursuant to Fed. R. Civ. P. 12(c), as well as Claimant Percy Thelmore Tyndall's ("Claimant") Motion for Remand for Failure to Consider Evidence Submitted to the Appeals Council ("Motion for Remand") [DE-22]. Claimant filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Remand is denied, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the case is remanded for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on October

5, 2012, and an application for SSI on October 19, 2012, alleging disability beginning September 27, 2012. (R. 235–252). The claims were denied initially and upon reconsideration. (R. 88–150). A hearing before an Administrative Law Judge ("ALJ") was held on December 18, 2014, at which Claimant, represented by counsel, and Claimant's wife appeared and testified. (R. 62–87). On February 27, 2015, the ALJ issued a decision denying Claimant's request for benefits. (R. 42–61). Claimant then requested a review of the ALJ's decision by the Appeals Council, (R. 167–71), and submitted additional evidence as part of his request, (R. 7–38). After reviewing and incorporating additional evidence, the Appeals Council denied Claimant's request for review on August 1, 2016. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh

conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree

3

of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) improper assessment of Claimant's residual functional capacity ("RFC"); (2) relying exclusively on the Medical-Vocational Guidelines listed in 20 C.F.R. § 404, Subpart P, Appendix 2 ("the Grids") in determining Claimant was capable of other employment existing in the national economy; and (3) improper analysis of whether Claimant's impairments meet or equal the Listings. Pl.'s Mem. [DE-21] at 7–17.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the alleged onset date. (R. 47). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease, epilepsy, and borderline intellect. *Id.* The ALJ also found Claimant had the following non-severe impairments: hypertension, high cholesterol, and atypical chest pain related to a cardiac condition. (R. 47–48). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 48–50). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in

moderate difficulties in his activities of daily living and with regard to concentration, persistence, or pace, and no difficulties in social functioning, with no episodes of decompensation. (R. 49). Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding that Claimant had the ability to perform medium work[1] with the following restrictions:

> [N]o climbing of ladders, ropes and scaffolds; occasional climbing of ramps and stairs; occasional balancing; frequent stooping, crouching and crawling; and no concentrated exposure to hazards. The claimant is further limited to understanding, remembering and carrying out simple instructions.

(R. 50–53). In making this assessment, the ALJ found Claimant's statements about his limitations were not entirely credible. (R. 51). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a roofing foreman and a maintenance foreman. (R. 53). At step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Claimant can perform. (R. 54–55).

## V. DISCUSSION

### A. Motion for Remand

Preliminarily, the court will address Claimant's Motion for Remand. [DE-22]. Claimant contends that he submitted 50 pages of briefing and additional evidence to the Appeals Council as part of his request for review of the ALJ's decision. Pl.'s Mot. [DE-22] at 2. Of the 50 pages, Claimant argues the Appeals Council only incorporated his lawyer's two-page January 28, 2016 brief, without incorporating the remaining documents. *Id.* (citing R. 6). The additional evidence includes the following: (1) an 11-page brief dated April 6, 2015, *id.* Ex. 1 [DE-22-1]; (2) a six-

---

1     Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, he can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

5

page exhibit addressing the Otis-Lennon Mental Ability Test ("Otis-Lennon Test"), *id.*; (3) a two-page brief dated January 28, 2016, *id.* Ex. 3 [DE-22-3]; (4) 24 pages of physical therapy records, dated May 7, 2015–July 31, 2015, *id.*; and (5) eight pages of records from OrthoWilmington, PA, dated May 22, 2015–July 17, 2015, *id.* The Commissioner did not respond to Claimant's Motion for Remand.

The Appeals Council must consider evidence submitted by a claimant with a request for review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991), *superseded on other grounds by* 20 C.F.R. § 404.1527; 20 C.F.R. § 404.976(b)(1) (effective Feb. 4, 2016) ("The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision."). Evidence is new if it is not duplicative or cumulative, and material if there is a "reasonable possibility that the new evidence would have changed the outcome of the case." *Wilkins*, 953 F.2d at 96. The Appeals Council need not review or consider new evidence that relates only to a time period after the ALJ issued the decision. *See* 20 C.F.R. § 404.976(b)(1) (stating that, on review, "[i]f [a claimant] submit[s] evidence which does not relate to the period on or before the date of the [ALJ] hearing decision, the Appeals Council will return the additional evidence to [the claimant] with an explanation as to why it did not accept the additional evidence and will advise [the claimant] of [his/her] right to file a new application."). Additionally, the Appeals Council need not explain its reason for denying review of an ALJ's decision. *Meyer v. Astrue*, 662 F.3d 700, 702 (4th Cir. 2011). However, "the Appeals Council

6

must consider new and material evidence relating to that period prior to the ALJ decision in determining whether to grant review, even though it may ultimately decline review." *Wilkins*, 953 F.2d at 95.

As an initial matter, the court must determine whether the Appeals Council considered and incorporated the additional evidence into the record, or simply determined that it did not relate to the relevant period and thus did not consider it. The Appeals Council stated it "looked at" the "medical and physical therapy reports form OrthoWilmington covering the period of May 7, 2015 through July 21, 2015 (32 pages)," but concluded the records were "about a later time" because the ALJ decided the case through February 27, 2015, and "[t]herefore, it [did] not affect the decision about whether [Claimant] w[as] disabled on or before February 27, 2015." (R. 2). In contrast to the "looked at" language regarding the medical records, the Appeals Council also stated that it "*considered* the reasons [Claimant] disagree[d] with the decision in the material listed on the enclosed Order of Appeals Council." *Id.* (emphasis added). The Order of Appeals Council stated that "the Appeals Council has received additional evidence, which it is making part of the record," consisting of a two-page brief filed by Claimant's attorney, which was incorporated into the record at Exhibit 11E. (R. 6). The two-page January 28, 2016 brief, the 24 pages of physical therapy records, and the eight pages of records from OrthoWilmington appear in the transcript before the court. (R. 7–38, 423–24). However, neither the 11-page April 6, 2016 brief nor the exhibit discussing the Otis-Lennon Test appear in the transcript before the court.

The court concludes that the Appeals Council did not consider the physical therapy records, the OrthoWilmington records, Claimant's 11-page April 6, 2016 brief, or the exhibit

7

discussing the Otis-Lennon Test. With respect to the physical therapy and OrthoWilmington records, as the Appeals Council stated, it believed this evidence was "about a later time" and would not affect the disability determination for the period at issue. (R. 2). The Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") regarding the Consideration of Additional Evidence by the Appeals Council explains that when the Appeals Council does not consider additional evidence it will "[n]ot exhibit the evidence," will "[a]ssociate a copy of the evidence in the appropriate section of the file," and "[t]he evidence . . . will be included in the certified administrative record if the case is appealed to Federal court." HALLEX § I-3-5-20, https://www.ssa.gov/OP_Home/hallex/I-03/I-3-5-20.html (last visited Jan. 30, 2018). This is precisely what the Appeals Council did with respect to the physical therapy and OrthoWilmington records. Thus, the fact that the Appeals Council stated that it "looked at" rather than "considered" the records, did not "make part of the record" or "exhibit" the records, and the records were found in the Court Transcript Index portion of the record, all support the conclusion that the records were not considered by the Appeals Council. With respect to counsel's 11-page brief and attached exhibit regarding the Otis-Lennon Test, the court finds that the Appeals Council did not consider them because these documents were not mentioned at all by the Appeals Council, nor made a part of the record. Accordingly, the court must determine whether these pieces of evidence are new, material, and relate to the period on or before the date of the ALJ's decision. *Wilkins*, 953 F.2d at 95. If so, the Appeals Council erred in failing to consider it, and the matter must be remanded.

The physical therapy and OrthoWilmington records are not duplicative or cumulative and therefore constitute "new" evidence. However, these records do not relate to a period before the

8

date of the ALJ's decision, because they are records of visits that took place after the ALJ rendered his decision on February 27, 2015. Therefore, the Appeals Council did not err in finding that these records did not relate to a period before the date of the ALJ's decision.

With respect to the 11-page brief and attached exhibit, neither document can be considered evidence of disability. The brief is exclusively legal argument and the exhibit is an internet printout describing the Otis-Lennon Test generally. As such, the court lacks authority to review the Appeals Council's decision to deny review of the ALJ's decision because the Appeals Council's denial is not the final decision of the Commissioner, and sentence four only allows review of the Commissioner's final decision. *See Smith v. Comm'r Soc. Sec'y*, No. 2:12-CV-12160, 2013 WL 5243448, at *4 (E.D. Mich. Sept. 18, 2013) (holding that a reviewing court lacked authority under sentence four of 42 U.S.C. § 405(g) to remand when the Appeals Council failed to consider a legal brief). Further, Claimant's counsel has not provided, nor has this court found, any authority which allows a reviewing court to remand a case pursuant to sentence six of 42 U.S.C. § 405(g) when the additional evidence proffered is not medical in nature. Accordingly, the court denies Claimant's Motion for Remand.

**B.     Additional Evidence**

In addition to the evidence discussed in his Motion for Remand, Claimant also requests, in consideration of his motion for judgment on the pleadings, that the court consider additional evidence that was not presented to the Appeals Council. In particular, Claimant requests that two neuropsychological evaluations performed by Christy L. Jones, Ph.D., ABN, AAPDN of Coastal Neuropsychological Services on July 22, 29, 30, and August 5, 2015 and on June 8, 15, 20, and 30, 2016, be considered by the court in its review of the ALJ's February 27, 2015 decision. Pl.'s

Mem. [DE-21] at 15.

When a claimant submits evidence that has not been presented to the Commissioner, the court may consider the evidence *only* for the limited purpose of deciding whether to issue a sentence six remand under 42 U.S.C. § 405(g) (emphasis added). In a sentence six remand, the court does not rule on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.* Under sentence six, "[t]he court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added); *See Salling v. Apfel*, No. 99-1772, 1999 WL 1032616, at *2 (4th Cir. Nov. 15, 1999) (per curiam) (unpublished); *see also Nuckles v. Astrue*, No. 7:09-CV-13-FL, 2009 WL 3208685, at *4 (E.D.N.C. Sept. 14, 2009) (explaining a sentence six remand requires the evidence be new and material and there must be good cause for failing to submit the evidence earlier).

Evidence is new if it is not duplicative or cumulative of that which is already contained in the record. *Wilkins*, 953 F.2d at 96 (citations omitted). Evidence is material if it relates to the period on or before the date of the ALJ's decision, 20 C.F.R. § 404.970(b), and there is a "reasonable possibility that the new evidence would have changed the outcome" of the case. *Wilkins*, 953 F.2d at 96 (citing *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985)). Evidence

10

is immaterial if there is not a reasonable possibility that the new evidence would have changed the outcome. *See Salling*, 1999 WL 1032616, at *2 (finding that because the evidence contained in treating physician's letter did not relate to the period on or before the date of the ALJ's hearing decision it cannot change the outcome of the case, and thus was not material) (citing *Wilkins*, 953 F.2d at 95-96). Finally, as for good cause, the courts have recognized that in crafting the statute governing remand, it was Congress's intent to permit remand pursuant to sentence six on a very limited basis. *See Rogers v. Barnart*, 204 F. Supp. 2d 885, 892 (W.D.N.C. 2002) ("'Congress made it unmistakably clear' that it intended to limit remands for 'new evidence.'") (quoting *Melkonyan*, 501 U.S. at 99–100). The plaintiff bears the burden of proving that the requirements of sentence six are met. *Id.*

Here, the psychological evaluations for I.Q. and memory were conducted after the ALJ's decision was rendered on February 27, 2015—the first was conducted approximately five months after the decision was rendered, and the second was conducted approximately one year and four months after the decision was rendered. Pl.'s Mem. [DE-21] at 15. While the evaluations addressed Claimant's ongoing mental impairments, the tests themselves did not relate back to the time period before the ALJ's decision, and only show the state of Claimant's impairment after the decision. *See King v. Astrue*, No. 5:08-CV-527-D, 2009 WL 4827413, at *2 (E.D.N.C. Dec. 10, 2009) (finding plaintiff's newly-obtained IQ scores were not material because they were based on tests taken after the ALJ's decision) (citing *Salling*, 1999 WL 1032616, at *2). Further, Claimant has offered no argument to establish good cause for why this evidence was not presented to the Appeals Council, as the first test was completed before the denial of reconsideration was issued on August 1, 2016. Accordingly, this evidence is not

11

material, good cause has not been established, a sentence six remand is not warranted, and the court will not consider it in its review of the ALJ's decision.

## C.     The RFC Determination

Claimant contends that the ALJ failed to account for his mental impairments in the RFC, specifically arguing the finding that a limitation of "understanding, remembering and carrying out simple instructions" is insufficient to account for Claimant's moderate difficulties in concentration, persistence, or pace. Pl.'s Mem. [DE-21] at 15.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed

by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7. The RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*; *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

Here, the ALJ found that Claimant had moderate difficulties in concentration, persistence, or pace, as well as a severe impairment of borderline intellect. (R. 47, 49). In addressing Claimant's mental impairments with respect to the RFC, the ALJ stated, "I have allowed consideration for the claimant's borderline intellect by limiting him to work activity that requires only understanding, remembering and carrying out simple instructions. Such limitation is sufficient given his ability to sustain full-time substantial gainful activity at the semi-skilled level prior to his alleged onset date." (R. 53). The ALJ failed to proffer any further explanation of how the RFC accommodates Claimant's mental impairment. The ALJ's analysis is deficient for two reasons. First, as the court has previously held, a limitation of merely "understanding, remembering, and carrying out simple instructions," without sufficient explanation, fails to account for a claimant's moderate limitations in maintaining concentration, persistence, or pace. *Wilson v. Colvin*, No. 7:15-CV-256-FL, 2017 WL 280889, at *5 (E.D.N.C. Jan. 4, 2017), *adopted by*, 2017 WL 280706 (Jan. 20, 2017). Second, the ALJ relies only on his classification of

13

Claimant's prior work as "semi-skilled," a determination made at step four, to explain why the limitation sufficiently accommodates Claimant's mental impairment. Because the ALJ relied only on his step four analysis in fashioning the RFC, and such an analysis is crucial in determining whether his RFC explanation is sufficient, the court will review the ALJ's step four analysis.

In determining whether a claimant can perform his past relevant work, the Commissioner "will ask [the claimant] for information about work you have done in the past" and "may also ask other people who know about your work" and "may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor, to obtain evidence [she] need[s] to help [her] determine whether [a claimant] can do [her] past relevant work, given [her] residual functional capacity." 20 C.F.R. § 404.1560(b)(2). "The claimant is the primary source for vocational documentation." S.S.R. 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982).

Here, the ALJ failed to obtain VE testimony with respect to either step four or step five of the sequential evaluation process. Therefore, the ALJ himself classified Claimant's prior work as a roofing foreman and a maintenance foreman as semi-skilled, without any explanation or reference to the Dictionary of Occupational Titles. Semi-skilled work is defined as follows:

> [W]ork which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage, or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.

20 C.F.R. § 404.1568. While Claimant testified that he was a foreman, he also testified that, due

14

to his illiteracy, the companies he worked for would send another person with him on job sites to handle any reading or writing, such as keeping time sheets, that was required. (R. 68, 70). Claimant also testified that the superintendent was the one who would go to a job site, evaluate what materials were needed, and then be in the cage with Claimant and tell him what materials to put on his truck. (R. 69). Therefore, while Claimant testified that he was a foreman, he concurrently testified that other people were responsible for doing certain crucial aspects of the foreman's job, such as doing paperwork, as well as evaluating a job and telling Claimant what materials were needed. Without VE testimony, it is difficult for the court to determine whether the ALJ's unilateral and unexplained classification of Claimant's prior work as a foreman at the semi-skilled level was proper, given the inconsistencies in his testimony.

Moreover, even considering the decision as a whole, the ALJ fails to cite sufficient evidence to demonstrate that Claimant's mental impairment is accommodated for within the RFC. *See Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011); *Pitta v. Astrue*, No. 5:11-CV-356-D, 2012 WL 3524829, at *3 (E.D.N.C. Aug. 14, 2012) (noting the evidentiary basis for the ALJ's Listing decision was evident from the ALJ's RFC evaluation); *Harley v. Colvin*, No. 5:14-CV-853-D, 2015 WL 9699531, at *10 (E.D.N.C. Dec. 2, 2015) (concluding the relevance of findings in the ALJ's decision is not negated because they appeared at a different step of the sequential evaluation where "the ALJ's decision must be read as a whole") (citation omitted), *adopted by*, 2016 WL 126372 (Jan. 11, 2016). The ALJ discussed Claimant's mental impairments in his analysis of the Listings. In particular, he noted that Claimant was tested in December 2012 and his IQ scores on the WAIS-IV fell within the mildly intellectual deficient range with a full-scale IQ score of 67. (R. 48). He also noted that Claimant underwent testing in

March 2013, and performed poorly on memory testing—however, the examiner reported that she "felt the scores were not a valid indicator of the claimant's ability." *Id.* He last noted Claimant's IQ score of 79 on the Otis-Lennon Test administered in 1970 at age eight. *Id.* The ALJ discounted the WAIS-IV score from December 2012 stating that he did not find it "to be a valid indicator of the claimant's true intellectual functioning, as the claimant obtained a higher IQ score on testing administered in 1970."[2] *Id.* He also noted Claimant's ability to perform semi-skilled work, stating "[C]laimant's ability to perform semi-skilled work is inconsistent with a diagnosis of mild intellectual deficiency." *Id.*

Here, the ALJ wholly failed to discuss any medical evidence or Claimant's testimony with respect to the mental RFC, and any discussion with respect to the Listings is insufficient to explain the RFC limitations for mental impairment. The ALJ's questionable conclusion that Claimant's prior work was semi-skilled is not substantial evidence for the reasons previously discussed. Accordingly, remand for further proceedings is the appropriate remedy in cases such as this where "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). The Fourth Circuit has made clear that it is not the role of the court to remedy such failures by engaging in the required analysis in the first instance. *Fox v. Colvin*, 632 F. App'x 750, 754 (4th Cir. Dec. 17, 2015) (per curiam) ("Our circuit precedent makes clear that it is not our role to speculate as to how the ALJ applied the law to its findings or to hypothesize the

---

[2] Although not an independent ground for remand, the court notes that in the brief that was not considered by the Appeals Council, Claimant contends that the Otis-Lennon Test is not a compatible IQ test, in that it takes only one hour to perform, is administered by teachers, and requires no reading. Pl.'s Mot. Ex. 1 [DE-22-1] at 3. Further, courts have held that the Otis-Lennon Test is not a proper IQ test for purposes of assessing Listing 12.05C. *See, e.g., Harris v. Colvin*, No. 3:14-CV-143-RJC, 2015 WL 4921180, at *4 (W.D.N.C. Aug. 18, 2015) ("An Otis-Lennon test is not a standardized test of intellectual functioning and does not assess an individual's IQ."). Therefore, the ALJ's reliance on the Otis-Lennon Test calls into question the Listing analysis, and any reliance on this analysis to supplement the RFC discussion with substantial evidence fails.

16

ALJ's justifications that would perhaps find support in the record); *Radford*, 734 F.3d at 296 (citing *Hancock v. Astrue*, 667 F.3d 472 (4th Cir. 2012)).

Because reconsideration of Claimant's RFC may impact the remaining issues raised by Claimant related to the Listings and the ALJ's reliance on the Grids, it is recommended that these issues receive additional consideration on remand, as necessary, in light of the ALJ's further consideration of Claimant's mental impairments. *See Jones v. Astrue*, No. 5:11-CV-206-FL, 2012 WL 3580482, at *8 (E.D.N.C. Apr. 19, 2012) ("Because this court finds that remand on the issue of the treating physician's opinion will affect the remaining issues raised by Claimant, it does not address those arguments."), *adopted by*, 2012 WL 3580054 (Aug. 17, 2012).

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Remand [DE-22] is DENIED, Claimant's Motion for Judgment on the Pleadings [DE-20] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-25] is DENIED, and the case is REMANDED for further proceedings consistent with this order.

SO ORDERED, this the 30th day of January 2018.

Robert B. Jones, Jr.
United States Magistrate Judge